# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Michael T. Mason | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 2291 | **DATE** | 9/8/2004 |
| **CASE TITLE** | Baker vs. Barnhart | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] As stated in the attached Memorandum Opinion and Order, plaintiff's motion for summary judgment [20-1] is granted, defendant's motion for summary judgment [25-1] is denied and the case is remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion. This is a final judgment and order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 2 | |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | SEP 0 9 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | 28 |
| | Copy to judge/magistrate judge. | U.S. DISTRICT COURT | 9/8/2004 | |
| | | | date mailed notice | |
| KF | courtroom deputy's initials | 2004 SEP -8 PM 12:41 | KF | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOHN BAKER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 03 C 2291 |
| v. ) | |
| ) | Mag. Judge Michael T. Mason |
| JO ANNE B. BARNHART, ) | |
| Commissioner of Social Security ) | |
| ) | |
| Defendant. ) | |

**DOCKETED**

MEMORANDUM OPINION AND ORDER

SEP 0 9 2004

Michael T. Mason, United States Magistrate Judge:

Plaintiff, John Baker ("Baker" or "plaintiff"), has brought a motion for summary judgment seeking judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner" or "defendant"), who denied Baker's claim for Supplemental Security Income ("SSI") under the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423(d), 1381a.[1] Defendant Barnhart filed a cross-motion for summary judgment asking that we uphold the decision of the Administrative Law Judge ("ALJ"). We have jurisdiction to hear this matter pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the following reasons, we grant plaintiff's motion and deny defendant's motion, remanding this case to the ALJ for further proceedings consistent with this opinion.

*Procedural History*

Prior to January 1, 1997, plaintiff received SSI benefits based on an alcohol related disability. (R. 116). Baker's benefits were discontinued on that date due to the

---

[1] Plaintiff also filed an unopposed motion to supplement the administrative record. The motion is granted and the supplemental documents have been considered, were applicable, in rendering this decision.



enactment of Public Law 104-121. Public Law 104-121, known as the "Contract With America Advancement Act of 1996", eliminated SSI benefits for persons whose "alcoholism or drug addiction would be a contributing factor material to the Commissioner's determination that the individual is disabled." 18 U.S.C. §423(d)(2)(c). Aware that his SSI benefits were about to be terminated, on August 6, 1996, plaintiff filed an application for disability benefits based on grounds other than alcoholism. His application was denied both initially and upon reconsideration. On February 26, 1997, Baker requested, and was granted, a hearing before ALJ Alvin Liebling. (R. 114-20). ALJ Liebling issued an opinion denying Baker's August 6, 1996 application for benefits on January 1, 1997. (R. 120). Plaintiff filed an appeal with the Appeals Counsel, which was denied initially. (R. 206-209). Subsequently, the Appeals Counsel vacated its original order, remanding Baker's case for further proceedings. (R. 207).

ALJ John K. Kraybill conducted a subsequent administrative hearing on November 9, 2000. Plaintiff, his neighbor, Donna Quince, and a medical expert ("ME"), Dr. Kenneth Kessler, testified at the hearing. (R. 37). At the conclusion of the hearing, ALJ Kraybill left the administrative record open to allow for post-hearing psychological testing. Thereafter, ALJ Kraybill conducted a follow-up hearing on June 2, 2001[2], at which plaintiff, Dr. Kessler, and vocational expert ("VE"), GleeAnn Kehr, testified. (R. 81). On June 25, 2001, ALJ Kraybill issued a written decision denying plaintiff's application for SSI benefits. (R. 19-25). The Appeals Council denied plaintiff's request

---

[2]The transcript of the proceedings from the follow-up hearing states that it occurred on June 2, 2001. ALJ Kraybill's written decision states that the follow-up hearing occurred on May 2, 2001. We adopt the date on the transcript.

2

for review and ALJ Kraybill's decision became the final decision of the Commissioner. See *Zurawski v. Halter*, 245 F.3d 881 (7th Cir. 2001); Reg. §416.1481. Plaintiff now appeals that decision to this court.

**Factual Background**

*1. Medical Evidence*

Mr. Baker has been diagnosed with a right clavicle fracture that healed in a deformed and displaced manner, peripheral neuropathy of the left wrist, and a history of chronic alcohol abuse.[3] The medical evidence plaintiff presented to the ALJ included medical records from Silver Cross Hospital, treatment notes from Dr. Joyce Allen, both physical and psychological consultative examination reports, and a physical residual functional capacity ("RFC") assessment.

On December 10, 1996, Disability Determination Services ("DDS") physician Dr. Rito Maningo examined plaintiff. (R. 160-64). During the examination, Baker complained of pain in his right shoulder, numbness in the fingers on his left hand, and occasional pain in his left wrist. Dr. Maningo noted that Baker fractured his right clavicle in a car accident in the mid 1990s, had a medial orbital fracture of the right orbit in April 1996, and had surgery on his left wrist to repair severed nerves. He also noted that Baker was right-handed and, without any problem, could use his right hand to button and unbutton his shirt and tie and unties his shoes.

Dr. Maningo did not note any evidence of acute inflammatory conditions in

---

[3] The ALJ's decision was not based on plaintiff's alcohol related ailments. Therefore, Baker's alcohol use is not relevant to the issues presently before the court and will not be addressed in this opinion.

3

Baker's left wrist or right clavicle. (R. 163). He also found that plaintiff did not display atrophy or hypertrophy of the muscles and that his gait and weight-bearing were normal. (R. 163). Ultimately, Dr. Maningo diagnosed Baker with chronic pain in the right shoulder, peripheral neuropathy in his left wrist, and a history of chronic ethanol abuse, currently in short-term remission. (R. 164).

A physical RFC assessment dated December 17, 1996, reported that Baker could lift up to fifty pounds occasionally, and twenty-five pounds frequently. (R. 167). According to the RFC, Baker could stand and/or walk about six hours in an eight-hour day and could sit for a total of about six hours in an eight-hour day. (R. 167). His ability to push and/or pull was unlimited and he had no postural, visual, communicative, or environmental limitations. (R. 168-71). However, plaintiff's ability to reach in all directions with his right extremity was limited, but there were no manipulative limitations for his left extremity. (R. 169).

On July 9, 1998, Dr. James Ahstrom, an arthroscopic surgeon, examined Baker. Dr. Ahstrom opined that plaintiff had an obvious deformity in his right clavicle and that the right clavicle fragments were significantly displaced. He also noted a limited range of motion in Baker's right arm and shoulder. As for Baker's left wrist, Dr. Ahstrom found limited motion and diminished sensation over the tips of digits 2-5 on plaintiff's left hand. Dr. Ahstrom did not find any muscle atrophy, or real lack of motion in the left hand. However, he did note that Baker could not touch his thumb to his pinky finger on his left hand and that his grip was stronger with his right hand than with his left hand.

On August 27, 1998, William Hilger, Jr. Ph.D., at the request of the DDS, performed a consultative psychological examination of Baker. (R. 181-83). During the

4

examination, Baker reported that he was not taking any medications on a regular basis. (R. 181). Dr. Hilger opined that plaintiff showed poor levels of general knowledge, judgment, calculational ability, conceptual reasoning, and abstract reasoning. He considered plaintiff suitable for very simple and routine work duties under close supervision. Dr. Hilger suggested that plaintiff might be able to perform simple sedentary factory jobs under fairly close supervision. (R. 183). Dr. Hilger regarded plaintiff's reasoning ability as low, ability to make occupational adjustments as minimal, ability to make personal adjustments as normal, and ability to make social adjustments as fair. (R. 184). Dr. Hilger also noted that plaintiff's last regular employment was in 1978 as a laborer for GAF Corporation. (R. 182). Plaintiff worked at GAF for four years until he was terminated because of his alcohol use and poor attendance. (R. 182). Baker has not had any regular employment since his termination in 1978. (R. 182). Dr. Hilger opined that plaintiff would be unable to properly manage any benefit payments in view of his low levels of judgment and calculational skills as well as his propensity to use any benefit payments to pay for his alcohol habit. (R. 183). Dr. Hilger did not regard plaintiff as limited in his daily activities and did not note any deterioration in personal habits. (R. 185).

On October 20, 2000, Dr. Joyce Allen completed a form for the Township of Joliet's Community Work and Training Program. Based on four separate visits with Baker, she opined that Baker's severe degenerative joint disease and history of clavicle fracture were disabling, although she did not know whether these conditions were permanently disabling. (R. 251). She further opined that plaintiff could not do any lifting or carrying. (R. 251).

5

On January 31, 2001, Erwin Baukus, Ph.D., performed consultative psychological testing, including intelligence testing and memory testing, on Baker. (R. 262-65). Dr. Baukus reported good motivation and good persistence and considered the test results valid. (R. 264). Baker has an eleventh-grade education, however he can only read at the fifth-grade level. (R. 262, 264). Plaintiff tested at the borderline level of intellectual functioning, but Dr. Baukus did not regard plaintiff as having severe functional restrictions based on intelligence. (R. 265). Plaintiff was also well-oriented to person, time, and place. (R. 264-65). Dr. Baukus regarded plaintiff as having a good ability to perform the twenty-two mental functioning tasks listed in the Medical Source Statement. (R. 266-67). Dr. Baukus also opined that although plaintiff was intellectually capable of managing his funds, if he resumed his drinking habit he would likely spend his benefit payments on alcohol. (R. 265).

Finally, the administrative record contains Baker's various treatment records from the Silver Cross Hospital and the Will-Grundy Medical Clinic. These records document plaintiff's repeated complaints of pain and his limited range of motion and use of his right shoulder and left wrist. The records also provide objective medical evidence of the deformity in plaintiff's right shoulder and the peripheral neuropathy of his left wrist.

2. *Plaintiff's Testimony*

At the second administrative hearing on November 9, 2000, plaintiff appeared and testified before ALJ Kraybill. Plaintiff testified that he was currently taking Vioxx, Robaxin, and Relafen and he did not experience any side effects from these prescription medications. (R. 42). Plaintiff further stated that he could only carry small items like grocery bags with his right hand. (R. 47-48). At the time of the hearing,

6

Baker lived by himself in an apartment that was part of a duplex owned by long-time family friend, Donna Quince. (R. 41, 46, 57-58). Baker testified that he cleaned his apartment, but Ms. Quince did his laundry, helped him shop for food, cooked some of his meals, and sometimes drove him to his appointments. (R. 44, 46, 47, 57, 64-65, 70-71).

### 3. Medical Expert's Testimony

ME Kenneth Kessler, Ph.D., testified at plaintiff's November 9, 2000 and June 2, 2001 administrative hearings. At the June 2 hearing, Dr. Kessler opined that, based on the results of Dr. Baukus' intelligence testing, Baker was functioning within the borderline intellectual range. (R. 85). Baker could read single words at a fifth-grade level, however Dr. Baukus did not test his comprehension skills. Baker was well oriented to people, place, and time (in the ninety-ninth percentile), which Dr. Kessler found typical and an indication that Baker was being cooperative during the testing.

Plaintiff was in the twenty-sixth percentile for his ability to remember digits forward, a measure of attention span. However, Baker performed in the mild to moderately impaired range with his ability to remember digits backwards. Dr. Kessler interpreted these results as an indication that "in a day-to-day practical setting, as long as everything was going well in the best case scenario [Baker] would have a decent immediate recall of something that he just heard if it was fairly discrete and not too long." (R. 87). Baker would have more difficulty with recall if there were any distractions or confusion.

Dr. Kessler also found that plaintiff's verbal memory was very limited (in approximately the tenth percentile). (R. 88). This means that if Baker was verbally told

7

a paragraph's worth of instructions, he could not retain much of the information. (R. 88). Baker's visual memory without distractions was much better than his verbal memory, but with distractions it was in the mildly impaired range. (R. 88).

After reviewing Dr. Baukus' evaluation and Baker's test results, Dr. Kessler disagreed with Dr. Baukus' mental RFC assessment. Dr. Baukus opined that plaintiff could perform each of the twenty-two mental functioning categories listed in the Medical Source Statement in the "good" range. Dr. Kessler opined that plaintiff could perform less than half of those categories in the "good" range. Kessler found Baker's mental functional capacity for two of those categories to be "poor,' while his functioning in the remainder was "fair." (R. 89).

Dr. Kessler agreed with Dr. Baukus that Baker had a "good" ability to: (1) remember locations and work-like procedures; (2) make simple work-related decisions; (3) interact appropriately with the public; (4) ask simple questions or request assistance; (5) accept instructions and respond appropriately to criticism; (6) get along with coworkers; (7) maintain socially appropriate behavior; (8) adhere to basic standards of neatness; and (9) be aware of normal hazards and take appropriate precautions. (R. 91-92). The agreement ends there.

Dr. Kessler opined that Baker only had a "fair" ability to: (1) understand and remember short, simple instructions; (2) carry out short, simple instructions; (3) maintain attention and concentration for extended periods; (4) perform activities within a schedule, maintain regular attendance, and be punctual; (5) sustain an ordinary routine without special supervision; (6) work with or near others without being distracted by them; (7) complete a normal workday or workweek; (8) perform at a consistent pace; (9)

8

respond appropriately to changes in the work setting; (10) travel to unfamiliar places and use public transportation; and (11) set realistic goals or make plans independently of others. (R. 91-92). Finally, he found that Baker had a "poor" ability to understand, remember, and carry out detailed instructions. (R. 91). Dr. Kessler defined "fair" as an ability to do these mental functions satisfactorily some of the time. (R. 94).

Based on the aforementioned limitations, Dr. Kessler opined that plaintiff could not work in a fast food restaurant because he could not handle the orders. (R. 92-93). Given Baker's scores, Dr. Kessler also opined that his functioning would be optimal in a situation where the tasks were extremely predictable and repetitive and there was not much confusion, interaction, or any independent decision making. (R. 92-93). Further, plaintiff would require close supervision when initially learning a task and when learning any modifications of that task. (R. 96-97). However, once plaintiff learned a task, he would no longer require close supervision. (R. 96-97).

4. *Vocational Expert's Testimony*

Finally, VE GleeAnn Kehr testified at the June 2 hearing. At the hearing, the ALJ asked VE Kehr if there were any jobs in the regional economy, meaning the Chicago metropolitan area and the six surrounding counties, that the following hypothetical person could perform: a forty-nine-year-old man with limited education, no past relevant work, status post right clavicle fracture, peripheral neuropathy of the left wrist, and a history of chronic alcohol abuse in short-term remission. (R. 99). The ALJ also added the following limitations to the hypothetical; the work must require no more than a medium exertion level, cannot require any overhead work with the man's right extremity, must be repetitive and have simple instructions, cannot require independent decision

9

making or problem solving, must be limited to superficial public contact, and cannot be in a place where alcohol is on the premises. (R. 99). The VE opined that such a person could generally perform packaging, assembly, and sorting jobs and that most of those jobs would be at the light, not medium, exertional level. (R. 99). There would be about 11,500 such jobs in the regional economy.

VE Kern also stated that difficulty grasping with either hand, would preclude the hypothetical man from performing all of the above referenced jobs *and* most jobs of a very simple and repetitive nature. (R. 101). VE Kehr also stated that, if the person could only grasp with both hands occasionally, meaning one-third of the work day, he would still be precluded from performing those jobs. In a manufacturing setting, a worker needs to be able to grasp with both hands on a frequent to constant basis because pace is a very important requirement for those types of jobs.

The VE also testified that based on Dr. Kessler's testimony and his opinion that Baker's mental ability to perform a number of work related tasks would only be "fair", plaintiff would not be able to perform any substantial gainful activity. With a "fair" functioning ability in numerous areas, plaintiff's performance would not be consistent enough to complete a full workday or workweek at a satisfactory level. The VE testified that the "fairs" identified by Dr. Kessler would compound against each other in a work setting and preclude all substantial gainful activity. (R. 104). However, the specific functional limitations described by Dr. Kessler, such as not working in a fast food restaurant and performing simple, repetitive tasks, would not in and of themselves preclude all substantial gainful employment. (R. 104).

*Standard of Review*

We must affirm the ALJ's decision if it is supported by substantial evidence and free from legal error. 42 U.S.C. §405(g); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence is more than a scintilla of evidence and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The ALJ need not weigh every piece of evidence, however, when the Commissioner's "decision lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele*, 290 F.3d at 940. Generally, we cannot substitute our judgment for that of the ALJ by deciding facts anew, reweighing the evidence, resolving conflicts in evidence, or deciding questions of credibility. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998).

The ALJ must "build an accurate and logical bridge from the evidence to his conclusions so that [the Court] may afford the claimant meaningful review of the [Commissioner's] ultimate findings." *Blakes ex rel. Wolfe v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003). Therefore, the administrative record must contain evidence to support the ALJ's findings, *and* the ALJ must rationally articulate a basis for those findings. *Steele*, 290 F.3d at 941.

*Legal Analysis*

A person is disabled under the Act if he or she has an "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §

11

423(d)(1)(A). In determining whether a claimant is disabled, the ALJ conducts a five step analysis: (1) whether the claimant is presently unemployed, (2) whether the claimant's impairment is severe, (3) whether the impairment meets or exceeds any of the specific impairments listed in the regulation, (4) whether the claimant is unable to perform his or her previous occupation and (5) whether the claimant is unable to perform any other work in the national economy given his or her age, education, or work experience. *Cichon v. Barnhart*, 222 F.Supp.2d 1019, 1025 (N.D. Ill. 2002) (citing 20 C.F.R. § 416.920(a) - (f)). If at any step in the inquiry the ALJ determines that the claimant is not disabled, the analysis ends. *Goodson v. Barnhart*, 217 F.Supp.2d 892, 900 (N.D.Ill. 2002). The claimant has the burden of establishing a disability at steps one through four. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). However, if the claimant reaches step five, "the burden shifts to the ALJ to establish that the claimant is capable of performing work in the national economy." *Id.*

In this case, the ALJ applied the five-step analysis outlined above and his conclusions at steps one through three are not contested. At step one, ALJ Kraybill found that plaintiff was not engaged in substantial gainful activity and had not been since the alleged onset of his disability. (R. 21). At step two, the ALJ determined that plaintiff suffered from the severe medical impairments of a status post right clavicle fracture, peripheral neuropathy of the left wrist, and a history of chronic alcohol abuse. *Id.* Although these impairments were severe within the meaning of the Regulations, ALJ Kraybill found that they did not meet or medically equal any of the impairments listed in the Regulation. *Id.* At step four, the ALJ concluded that plaintiff had no past relevant work experience and, therefore could not perform any past relevant work. The

12

ALJ also found that Baker had the residual functioning capacity to perform light level exertional work. (R. 21-22). Finally, at step five, the ALJ considered the plaintiff's age, education, vocational experience, residual functioning capacity, and the testimony of a vocational expert, and found that plaintiff could perform a significant number of jobs in the national economy. (R. 25). Therefore, the ALJ concluded that Baker was not disabled under the Act. *Id.*

Baker raises the following four issues on appeal: (1) the ALJ misrepresented the VE's testimony in his written opinion; (2) the ALJ improperly disregarded the ME's testimony; (3) the ALJ ignored the findings of Dr. Allen, plaintiff's treating physician; and (4) the ALJ did not rationally articulate the basis for findings and conclusions within his written opinion.

## 1. *Misrepresentation of Evidence*

As stated above, for an ALJ's findings to be affirmed they must rest on substantial evidence. *Steele* 290 F.3d at 940. Therefore, when an ALJ has "patently misconstrued the evidence, has based a finding on a record lacking sufficient evidence, or has misconstrued the law, then we may vacate that decision and remand the case for a proper adjudication." *Scott v. Shalala*, 898 F.Supp. 1238, 1245 (N.D. Ill. 1995).

In this case, ALJ Kraybill misconstrued a critical question posed to VE Kehr and her corresponding answer. As discussed more fully *supra*, at the June 2, 2001 hearing, plaintiff's counsel asked VE Kehr if Dr. Kessler's testimony regarding plaintiff's mental functioning abilities would alter her answer to the ALJ's hypothetical. VE Kehr answered in the affirmative. In his opinion, ALJ Kraybill stated that plaintiff's counsel asked VE Kehr to add numerous pains to the ALJ's hypothetical. Not true. The VE was

13

never asked about pain. Rather, she was asked whether the mental limitations discussed by Dr. Kessler would impact plaintiff's ability to work. VE Kehr found that those functional limitations would negatively affect plaintiff's ability to work. Specifically, VE Kehr testified that the numerous categories in which plaintiff could only function at a "fair" level would compound against each other, precluding all substantial gainful employment. In his opinion, ALJ Kraybill incorrectly states that the VE testified that "adding numerous pains would compound against each and based on that finding, there would be no jobs." This is a blatant mischaracterization of the VE's testimony, requiring a remand of this case to the ALJ.

## 2. *Disregarding Testimony*

Next, Baker argues that in his opinion, the ALJ disregarded Dr. Kessler's testimony concerning Baker's limited mental functioning ability. As stated above, ALJ Kraybill misconstrued the testimony of VE Kehr when he erroneously characterized the limitations Dr. Kessler discussed as relating to pain. Those limitations were actually related to Baker's mental functioning capacity, not his allegations of pain. Dr. Baukus performed intelligence testing on Baker and concluded that Baker had "good" functioning ability in the twenty-two mental functioning categories he tested. Dr. Kessler disagreed with Dr. Baukus' findings, stating that plaintiff's functioning was "fair", not "good," in approximately half of those categories and "poor" in two categories. As stated above, VE Kehr opined, based on Dr. Kessler's findings, that the multiple areas where plaintiff's mental functioning was only "fair," would compound against each other, eliminated his ability to perform any substantial gainful employment.

14

ALJ Kraybill never addresses Dr. Kessler's findings, or VE Kehr's testimony about the effects of those findings. In his written opinion, the ALJ solely included Dr. Baukus' opinion that plaintiff's mental functioning was "good" in all areas. Although, the ALJ does not have to address each and every piece of evidence, the ALJ cannot reject an entire line of evidence without articulating his reasoning for doing so. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). An ALJ also may not "select and discuss only that evidence which favors his ultimate conclusion." *Id.* (citing *Orlando v. Heckler*, 776 F.2d 209, 213 (7th Cir. 1985). The omission of Dr. Kessler's actual testimony in the ALJ's written opinion is not harmless error as the Commissioner suggests. *Def.'s Summ. J. Br.* at 11. The failure of the ALJ to properly address the testimony of Dr. Kessler and VE Kehr requires a remand. On remand, the ALJ must address Dr. Kessler's findings regarding the plaintiff's mental functioning ability. He must also address VE Kehr's testimony regarding Dr. Kessler's findings and what effect, if any, those conclusions have on plaintiff's ability to perform substantial gainful employment.

3. *Dr. Allen's Findings*

Third, the ALJ failed to address an important finding by Dr. Allen, plaintiff's treating physician. In an October 20, 2000 report, Dr. Allen opined that based on plaintiff's physical ailments, he could not do any lifting or carrying. In his opinion, the ALJ mentioned Dr. Allen's October 20 report, but did not address Dr. Allen's specific finding that plaintiff could not do any lifting or carrying. The ALJ further concluded that plaintiff could in fact lift and or carry up to twenty pounds occasionally, and ten pounds frequently. As stated above, an ALJ may not "select and discuss only that evidence which favors his ultimate conclusion." *Herron*, 19 F.3d at 333. In Social Security cases,

15

"treating source opinions must be given special consideration." *Brown v. Barnhart*, 298 F.Supp.2d 773, 778 (7th Cir. 2004). If the ALJ chooses not to afford the treating physician's opinion controlling weight, he may not simply reject it. *Id.* Instead, he is required to "evaluate the opinion's weight by looking at the length, nature and extent of the plaintiff's and physician's treatment relationship; the degree to which the opinion is supported by the evidence; the opinion's consistency with the record as a whole; whether the doctor is a specialist and 'other factors.'" *Id.*

In his opinion ALJ Kraybill impermissibly ignored Dr. Allen's finding regarding plaintiff's ability to lift and carry. On remand, the ALJ must address this aspect of Dr. Allen's October 20 report and accord her findings the weight required by controlling case law.

### 4. No Rational Basis for the ALJ's Findings and Conclusion

Finally, Baker argues that there is no rational basis for the ALJ's findings and conclusions, and that they are not supported by substantial evidence. We agree. The ALJ's opinion is premised on a error of fact, namely the mischaracterization of the testimony of Dr. Kessler and ME Kehr. The opinion also fails to reference substantial relevant evidence within the administrative record. As stated above, the ALJ is required to build an accurate and logical bridge from the evidence to his conclusion. *Dixon*, 270 F.3d at 1177. He also must "sufficiently articulate his assessment of the evidence to assure us that the ALJ considered the important evidence . . . [and to enable] us to trace the path of the ALJ's reasoning." *Rohan v. Chater*, 98 F.3d 966, 971 (7th Cir. 1996). After reviewing the ALJ's opinion and the administrative record, this court cannot find that the ALJ has built the requisite accurate and logical bridge from the evidence to

16

the conclusion. ALJ Kraybill has also not provided us with sufficient analysis to trace the path of his reasoning. On remand, the ALJ must better articulate how a person with objective medical pathology in both his upper extremities can perform light work, and more specifically, any manufacturing related work.

*Conclusion*

For the reasons stated above, the court remands this case to the ALJ for further proceedings consistent with this opinion. On remand the ALJ should: (1) re-evaluate the testimony of Dr. Kessler and VE Kehr and consider the effect, if any, that testimony has on his determination regarding plaintiff's RFC; (2) consider Dr. Allen's finding that plaintiff cannot do any lifting or carrying and what effect, if any, that has on his determination regarding plaintiff's RFC; and (3) elaborate on his finding that plaintiff is capable of performing light work given his diagnosis of peripheral neuropathy of the left wrist and a deformed and displaced right clavicle. Although we have identified a number of deficiencies in the opinion before us, we cannot say that plaintiff is entitled to an outright award of benefits. Such a determination will be left to the ALJ on remand. Accordingly, we grant plaintiff's motion for summary judgment and deny defendant's motion for summary judgement. It is so ordered.

ENTER:

*[signature]*

MICHAEL T. MASON
United States Magistrate Judge

Dated: September 8, 2004

17